This appellant was found guilty by a jury on a trial on an indictment in pertinent part as follows: *Page 139 
 "Jesse Gosha . . . did on or about March 18, 1982, unlawfully, wilfully, feloniously and knowingly sell, manufacture, deliver or bring into the State of Alabama, or have in his possession in excess of 28 grams or more of cocaine or of any mixture of cocaine, contrary to the provisions of Section 20-2-80 of the Code of Alabama. . . ."
Code of Alabama 1975 (1982 Cumulative Supplement) § 20-2-80
(2)(b) provides:
 "Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine, described in Section 20-2-25 (1), is guilty of a felony, which felony shall be known as `trafficking in cocaine.' If the quantity involved:
 "Is 200 grams or more, but less than 400 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of five calendar years and to pay a fine of $100,000.00."
The court sentenced defendant to imprisonment for twenty years and imposed a fine of fifty thousand dollars. A condition of the sentence was that it was "to run concurrent with the previous sentence in Case No. 553," which was for eighteen years. No issue is presented on appeal as to the sufficiency of the evidence to show defendant's possession of "200 grams or more, but less than 400 grams" of cocaine or as to the extent of the sentence. Appellant raises three issues, which we will discuss in the order discussed in appellant's brief.
 I.
The first issue presented by appellant is stated in his brief as follows:
 "Did the Trial Court err in refusing to grant the requested continuance for court-appointed counsel, who had been appointed less than twenty-four hours prior to the commencement of the trial below?"
We have no doubt that under many circumstances it would be better for a trial court to grant a request for the continuance of a criminal case by court-appointed counsel who had been appointed less than twenty-four hours prior to the commencement of the trial. The transcript shows that the trial court gave lengthy and painstaking consideration to the request for a continuance in the instant case.
The case was set for trial on Tuesday, August 24, 1982. At approximately 9:30 A.M. that day, in chambers of the judge who tried the case, a conference was conducted among the judge, the prosecuting attorney, the defendant, the defendant's appointed attorney, and defendant's previously retained attorney, who had been retained by defendant to represent him in this case from the time of his arraignment, on April 22, 1982, until August 13, 1982, when said attorney's motion to be relieved as defendant's attorney was granted. As to this, the previously retained attorney said at the conference on August 24:
 "I talked with Mr. Gosha on the 12th and at that particular time we talked about several matters. We talked about the appeal that is pending and the case that was tried. We also talked about the appeal bond. We talked about the trial of this case at which time I indicated to Mr. Gosha that the trial was set for August 24. Mr. Gosha indicated to me that he was dissatisfied with my representation. At that point I told him that if he were dissatisfied with my representation that I would withdraw from the case and I advised him that I would file a motion to withdraw and ask him whether or not he could secure counsel, as I thought the Judge would not continue the trial because he had discharged me or I had withdrawn; and he indicated to me that all he needed to do was make a phone call and he could get a lawyer, at which time he asked the jailer or the deputy sheriff who was present whether or not he could make a phone call. . . ."
The previously retained attorney was asked by the judge whether "I advised you to go back and talk with him and tell him that the case would not be continued," and the attorney replied that he had not gone back to *Page 140 
talk with defendant because he "had already told him that" and defendant "had assured me that he could get counsel, that all he had to do was make a phone call." The attorney said he told defendant that "the case was set on the 24th."
At the particular conference, the secretary of the judge who tried the case was questioned by the judge, and she stated the following:
 "I believe it was Friday afternoon, Judge. I called the jail and asked one of the deputies — I don't recall who it was on the desk — to please go back and ask Mr. Gosha if he had obtained counsel as he was set to go to trial on the 24th. They did go back and call me back. They called me back and told me that he said he was going to obtain counsel and that he would know over the weekend whether or not . . . who it would be and would let me know and I called Monday again to check and asked the deputy to go back and check and see if he had obtained counsel, if so, who it was; and he came back and said he had not and that is when I came and talked to you about the case."
The transcript shows that the trial judge then stated:
 "And then at that time, that's yesterday, I brought him in, asked him if he had counsel, sent for him from jail, he came in and I asked him if he was indigent. He indicated that he was not indigent. He said he was not indigent, that he could hire himself a lawyer. At that time I told him that if he was going to he'd better go ahead because the case was still set for trial tomorrow and that's where the situation was. . . ."
The colloquy at the conference among the trial judge and the attorneys, with the defendant at all times present but saying practically nothing, continued at such length that we think it inappropriate to quote it all herein and limit the remainder of the colloquy to the following:
 "THE COURT: . . . I have asked Mr. Larry Craven, who is present, here today in Court, who is a lawyer here in the City of Montgomery, to sit in with Mr. Gosha during the trial of this case to try to help insure that all of his rights will be protected. That's the situation we are in. Mr. Craven is appointed, it's the first time he's been aware of the case. I have also called Mr. Hardwick, who is involved in the preparation of this trial, along with all the other trials on the first day set — so he's already prepared the case — too, in addition, as a friend of the Court — and I am appointing him even though he is not representing, to sit if Mr. Gosha does not want him to participate in any way he can just sit there. But I want him there and present in order to advise with Mr. Craven; and if Mr. Gosha will allow that and the representation of Mr. Gosha in the trial of this trafficking in cocaine case. Mr. Hardwick had to change his schedule at the request of the Court, but he is here and I would ask both of these gentlemen to sit at counsel table and to advise and assist the Defendant in any way that the Defendant will let them advise and assist him. Mr. Craven, if you want to say anything else — that brings us up to date. The venire is in the courtroom and I am ready to go strike the jury.
 "MR. CRAVEN: Your Honor, for the purposes of the record — I don't know whether or not it has been indicated by Mr. Gosha whether he wants counsel at the table, and I would ask the Court —
"THE COURT: Do you want these gentlemen?
"THE DEFENDANT: Yeah, sure.
 "THE COURT: You don't object to them sitting with you?
"THE DEFENDANT: No.
 "MR. CRAVEN: Your Honor, since I am somewhat unfamiliar with this particular type of appointment and these particular kinds of arrangements, I am at somewhat of a loss and I know the Court will appreciate this position, but for the record I would ask for a continuance in light of the fact that the appointment has come at such a late date and in order to allow counsel for the Defendant — even if *Page 141 
I am acting in an advisory capacity only and am completely unfamiliar at this point in time with the facts of the witnesses, any testimony that might be heard, any items of evidence that might be attempted to be introduced against Mr. Gosha. I think in light of what's occurred and speaking on his behalf I think a continuance would be in order for somebody to prepare his case.
 "THE COURT: Mr. Hardwick has previously prepared the case and he is here to advise with you. I'm not inclined to grant a continuance at this time. Three prior continuances were granted in the cases and this Defendant was fully aware, made aware and the jury is here and I am here and all the witnesses are here and the case is going to go to trial. That's one reason I'm aware that you have not been able to investigate the case or anything else, but Mr. Hardwick has and that's another reason I've called him — to try to make every effort to insure the rights of the Defendant in the trial of this case."
Perhaps we should say also that it is shown by the transcript of the colloquy quoted from above that another case against defendant, one for the possession or sale of a prohibited substance, was pending on the docket for August 24, 1982, but that such case was nol-prossed on motion of the State prior to the commencement of the trial in the instant case.
Counsel for appellant, different counsel from either of the attorneys assisting defendant on the trial of the instant case, has made a strong appeal in support of appellant's first issue.
It was highly unfortunate, we think, that the case could not have gone to trial on August 24, 1982, under more satisfactory conditions than those then existing relative to defendant's right to counsel in the defense of the case. However, no one is to blame for such unsatisfactory conditions other than defendant himself. Both attorneys whom the trial court had called upon to aid defendant in the defense of his case cross-examined witnesses for the State, only one attorney cross-examining each witness. At the close of the testimony for the State, a hearing out of the presence of the jury was conducted as to whether the defendant would testify in the case. The court instructed him comprehensively as to what his rights, constitutional and otherwise, were in this respect. The defense presented no testimony.
The transcript does not show the argument of counsel in the case, but it discloses that "counsel for both parties argued their case to the jury."
Counsel for appellant, who is not one of the attorneys on the trial of the case, has submitted an attractive brief in which he stoutly argues that the trial court was in error "in refusing to grant the requested continuance." In our opinion, the well established rule that the action of a trial court in refusing to grant a motion for a continuance should not be disturbed in the absence of a clear abuse of its discretion is here applicable. Furthermore, we are of the opinion that the revealed attitude of the defendant to the effect that he did not care to retain an attorney, even though he was financially able to do so, indicates his preference in that respect, which was based perhaps on his belief that he could then thereby prevent a just verdict and judgment against him or thereafter extricate himself from such a judgment.
 II.
Mr. Craven, the attorney who was not in the case until the day before it was tried, filed a motion for a new trial on September 14, 1982. The motion was overruled by the trial court on September 21, 1982.
In the second issue presented by appellant, his counsel says in his brief that the court "erred in summarily denying, without benefit of evidentiary hearing, appellant's motion for a new trial, wherein substantial issues concerning juror bias were raised." In one of the grounds of the motion for a new trial, it is averred that two members of the jury would have indicated to counsel that they did not understand *Page 142 
the nature of the question being asked with regard to law enforcement personnel. In another ground, it was alleged that "a substantial number of the venire sat as jurors on a criminal trial on Monday, August 23, 1982, in which the same witnesses appeared on behalf of the State and gave essentially the same testimony regarding a charge of illegal sale of drugs in an undercover operation conducted by its enforcement personnel" and that "the venire should have responded to the court's inquiry regarding their knowledge or relationship with any of the State's witnesses." In support of appellant's issue II, appellant quotes from United States v. Phillips, 664 F.2d 971,999 (5th Cir. 1981), as follows:
 "When juror misconduct concerns influences from outside sources, the complete failure of the trial court to hold a hearing constitutes an abuse of discretion and is reversible error because a presumption of prejudice arises when the trial court learns of such influences. United States v. Chiantese, supra, 582 F.2d [974] at 979 [(5th Cir. 1978)]. Any off-the-record contact with a jury is presumptably prejudicial and the Government bears the heavy burden of proving that such a contact did not affect the jury; if the Government cannot meet this burden, a new trial is required. United States v. Forrest, 620 F.2d 446, 457 (5th Cir. 1980)."
No ground of the motion for a new trial in the case sub judice alleges any "juror misconduct" or any "off-the-record contact with a jury" before or during the period of trial of the case or the return of the verdict of the jury. There was no duty on the trial court to conduct an "evidentiary hearing" of the motion for a new trial. We find no valid ground for holding that the court was in error in overruling defendant's motion for a new trial.
 III.
The last issue presented by appellant is thus stated:
 "Did the trial court err by impairing Appellant's right against self-incrimination as guaranteed by the Fifth Amendment to United States Constitution where in its oral charge to the jury, the court attributed certain statements to Appellant when he, in fact, never took the stand or testified?"
The transcript shows that during the court's oral charge it stated:
 "To the charge of trafficking in cocaine this Defendant has pled not guilty. He said I didn't do anything. I was not involved in this matter at all. Immediately upon a plea of not guilty the State has the burden of proving the Defendant's guilt beyond a reasonable doubt and to a moral certainty. . . ."
At the conclusion of the oral charge and before the jury commenced its deliberations, the transcript shows:
 "WHEREUPON, the following occurred out of the presence of the jury as follows:
". . . .
 "MR. CRAVEN: Thank you. Secondly, Judge, if I'm not mistaken, during that part of the charge wherein you indicated that the Defendant comes before you ladies and gentlemen and says to the indictment and pleads not guilty, I think you indicated — see if you caught this, too, I think you said the Defendant said he didn't do anything at all. Then there was something else said and that was all I caught of it, but —
 "THE COURT: I don't think I said that, but I will clear that up.
 "MR. CRAVEN: I think that's what needs to be indicated — something to the effect that he has that right to plead not guilty, or however you want to do that.
 "THE COURT: Would you like me to clear up the fact he hasn't testified? I will do that if you ask me to. I'll just tell them that he has a legal right to plead not guilty and has a legal right not to testify at all and that the burden is on the State of Alabama to prove his guilt.
"MR. CRAVEN: I think you should.
 "THE COURT: And that he stands on that right in the Constitution of the United States and you cannot consider the *Page 143 
fact that he didn't testify one way or another.
"MR. CRAVEN: I think that would be good. . . .
 "(WHEREUPON the following occurred in open court in the presence of the jury as follows:)
 "THE COURT: Ladies and gentlemen, I just want to make sure that there is one matter that is perfectly clear. When a defendant enters a plea of not guilty the burden automatically, under our system of criminal justice, is placed upon the State of Alabama to prove his guilt beyond a reasonable doubt and to a moral certainty. A person charged with a criminal offense, a Defendant in a criminal case, has no obligation whatsoever to take the stand and testify. He has a Constitutional right not to do so and you are not allowed to consider it to be a fact one way or another that he did not. That is his Constitutional privilege and it cannot be held against him in any way. On a plea of not guilty the burden is placed upon the State to prove a Defendant's guilt. A Defendant has no burden at all to prove non-guilt or to take the stand in any way whatsoever.
". . . ."
It is our view that upon consideration of the oral charge of the court in its entirety, the statement of the court therein, "He said I didn't do anything, I was not involved in this matter at all," the court was merely making it clear to the jury that the plea of not guilty interposed by defendant was a good plea to the charge made against him in the indictment in its entirety, including, as correctly contended by the State, the issue of guilt as an aider or abettor. In our opinion, no harm was done the defendant by reason of the statement by the trial court that defendant "said I didn't do anything. I was not involved in this matter at all." Moreover, the comprehensive charge of the trial court as to the strong presumption of innocence, the necessity for proof beyond a reasonable doubt and to a moral certainty of defendant's guilt, that defendant was under no duty whatever to prove his innocence or to testify in his behalf, and that his not taking the stand as a witness could not be held against him, removed any likelihood whatever of any harm to the defendant by what the court said in its oral charge.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.